UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MANHATTAN REVIEW LLC and JOERN      :    16 Civ. 0102 (LAK) (JCF)
MEISSNER, derivatively on behalf of:
Manhattan Review LLC,               :       REPORT AND
                                    :    RECOMMENDATION
                Plaintiffs,         :

   - against -                      :

TRACY YUN, MANHATTAN ENTERPRISE     :
GROUP LLC d/b/a MANHATTAN ELITE     :
PREP, CHRISTOPHER KELLY, and        :
HEATHER SIMON,                      :

                Defendants.         :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/15/16

     Manhattan Review LLC ("Manhattan Review") and Dr. Joern
Meissner, suing on Manhattan Review's behalf, bring this action
alleging a variety of claims stemming from Tracy Yun's formation
and operation of Manhattan Enterprise Group LLC, which does
business as "Manhattan Elite Prep."  The defendants -- Ms. Yun,
Manhattan Elite Prep, and Christopher Kelly -- have each moved to
dismiss the claims against them pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure.[1]  I recommend
granting the motions in part.

---

     [1] The plaintiffs voluntarily dismissed without prejudice
their claims against defendant Heather Simon pursuant to Rule
41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  (Notice
of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i) as to
Heather Simon dated April 13, 2016).

Background

    In March 2005, Dr. Meissner, "an expert in teaching students
to take the [] Graduate Management Admission Test ('GMAT')," and
Ms. Yun, "a former investment banker who possesses expertise in
business management," created the test-prep business Manhattan
Review, a Delaware limited liability company.  (Amended Complaint
("Am. Compl."), ¶¶ 16, 19-21).  They divided ownership seventy-
five percent to Dr. Meissner and twenty-five to Ms. Yun, though
later that year the two orally agreed to increase Ms. Yun's
ownership to thirty percent.  (Am. Compl., ¶¶ 22, 26).  Mr. Kelly,
an attorney admitted to practice in New York, represented Dr.
Meissner and Ms. Yun in creating Manhattan Review, filing the
paperwork necessary for the company to do business in New York,
and drafting an operating agreement that, though never signed,
governed the business's operation.  (Am. Compl., ¶¶ 23-24).  As
for their responsibilities, Ms. Yun ran the company's New York
office and oversaw accounting and tax issues while Dr. Meissner
provided "teaching and pedagogical contributions" and was
responsible for the website and "Internet commerce."  (Am. Compl.,
¶¶ 30-31, 34-35).  Alas, after six years of successfully operating
Manhattan Review together, Ms. Yun's "misinterpretation of the[]
personal relationship" between Dr. Meissner and herself led to
some "heated exchanges" and, eventually, to the events underlying

this litigation.  (Am. Compl., ¶¶ 28, 37-43).

Beginning in October 2011, Ms. Yun demanded that Dr. Meissner marry her or sell her his ownership interest, and she threatened to "shut down" and "destroy" Manhattan Review and create her own competing test-prep business.  (Am. Compl., ¶¶ 39-42).  She followed up on those threats by "empt[ying]" Manhattan Review's bank account, transferring the trademarks "Manhattan Review" and "Turbocharge Your Career" to herself, executing and filing a certificate of cancellation with the Delaware Secretary of State, informing Manhattan Review's employees that she was starting a new business and that they should begin referring to the business as "Manhattan Group," and creating Manhattan Elite Prep.  (Am. Compl., ¶¶ 44-45, 47-50).  Ms. Yun's new company began operating in January 2012, "wrongfully taking Manhattan Review's assets, business, intellectual property, clients, and employees."  (Am. Compl., ¶ 51).  She had all calls to Manhattan Review forwarded to Manhattan Elite Prep, "took Manhattan Review's Yelp reviews, Citysearch profile, My WikiBiz listing, and Facebook page, [and] redirect[ed] the public to Manhattan Elite Prep," marketed and sold Manhattan Review's copyrighted material, and used a logo that "was blatantly copied from the logo of Manhattan Review."  (Am. Compl., ¶¶ 52-56).  According to the Amended Complaint, the ongoing illegal conduct of Manhattan Elite Prep and Ms. Yun

includes "wrongfully caus[ing] listings to appear on Amazon that caused confusion" between the two companies and selling the copyright-infringing work "GMAT Math Concepts Guide." (Am. Compl., ¶¶ 66-71).

In committing the above-described acts, Ms. Yun allegedly received assistance from Mr. Kelly. According to the Amended Complaint, he "materially aid[ed] and abet[ted] [Ms.] Yun in her wrongful actions" by "transferring the trademarks owned by Manhattan Review to [Ms.] Yun," "assisting in the transfer of operations from Manhattan Review to Manhattan Elite Prep," and "infringing, and assisting in the infringement of, Manhattan Review's trademarks and copyrights." (Am. Compl., ¶¶ 61-62). Moreover, by contributing to "the destruction of Manhattan Review as a viable entity," "usurp[ing] [] Manhattan Review's assets, business, clients[,] and intellectual property," and assisting in Ms. Yun's "scheme to take Manhattan Review's business, operations, and assets," Mr. Kelly breached duties he owed to Manhattan Review as its lawyer. (Am. Compl., ¶ 63).

The Amended Complaint contains eleven causes of action: (1) breach of fiduciary duty (against Ms. Yun); (2) breach of contract (against Ms. Yun); (3) trademark infringement, unfair competition, and false designation of origin in violation of 15 U.S.C. § 1225(a) (against Ms. Yun and Manhattan Elite Prep); (4) unfair competition

(against Ms. Yun and Manhattan Elite Prep); (5) infringement in violation of New York statutory and common law (against Ms. Yun and Manhattan Elite Prep); (6) aiding and abetting breach of fiduciary duty (against Mr. Kelly); (7 & 8) copyright infringement or contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501 (against all defendants); (9 & 10) fraudulent conveyance (against Ms. Yun and Manhattan Elite Prep); and (11) malpractice and negligence (against Mr. Kelly).   The Amended Complaint contains a twelfth cause of action in which Dr. Meissner simply asserts claims one through eleven Dr. Meissner on Manhattan Review's behalf.

Legal Standard

To survive a motion to dismiss under Rule 12(b)(6),[2] "a complaint must contain sufficient factual matter . . . to 'state

---

[2] The defendants each argue that, because there is no allegation that the plaintiffs had a registered copyright for any work prior to filing this action, the copyright infringement claims should be dismissed pursuant to Rule 12(b)(1) on the ground that the Court lacks subject-matter jurisdiction over those claims. (See, e.g., Defendant Tracy Yun's Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Complaint ("Yun Memo.") at 13).   However,   "the   Copyright   Act's   registration requirement . . . is not jurisdictional," but rather constitutes an element of an infringement claim.   In re Indu Craft, Inc., 749 F.3d 107, 113 n.9 (2d Cir. 2014) (citing Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 167 (2010)).   Thus, the defendants' argument properly stated is that, absent an allegation that the plaintiffs have a registered copyright, the plaintiffs have failed to state a claim for copyright infringement.

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  While a complaint need not make "detailed factual allegations," it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action."  Id. (quoting Twombly, 550 U.S. at 555).  A complaint with "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient.  Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).  Further, where the complaint's allegations permit the court to infer only a possible, but not a plausible, claim for relief, it fails to meet the minimum standard.  Id. at 679.

The court's task in ruling on a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).  In doing so, a court should construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  However, this tenet "is

6

inapplicable to legal conclusions" and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Discussion

A.  Plaintiffs' "Standing"

The defendants assert that Dr. Meissner and Manhattan Review lack "standing" to bring the claims alleged in the Amended Complaint.[3]  (Yun Memo. at 8-12; Defendant Christopher Kelly's Memorandum of Law in Support of His Motion to Dismiss the Amended Complaint ("Kelly Memo.") at 8-9; Defendant Manhattan Enterprise Group's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint ("Elite Prep Memo.") at 6-7).[4]  As an initial

---

[3] Although the defendants reference two rulings in a related suit pending in state court on the issue of the plaintiffs' "standing" to sue, they apparently do not seek dismissal on the ground that the plaintiffs' claims are barred by res judicata or collateral estoppel.  (Defendant Tracy Yun's Reply Memorandum of Law in Further Support of Motion to Dismiss Plaintiffs' Amended Complaint ("Yun Reply") at 6).  Instead (according to Ms. Yun), they maintain that they mention the state court rulings because, pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, Manhattan Review's capacity to sue is governed by New York law and those prior rulings represent an accurate assessment of the plaintiffs' capacity to sue under New York law.  (Yun Reply at 6 n.6).  However, because I decline to reach the merits of the defendants' argument concerning capacity, the state court rulings are immaterial for present purposes.

[4] Both Mr. Kelly and Manhattan Elite Prep explicitly adopt many of the arguments advanced by Ms. Yun in her memorandum of law.  (Kelly Memo. at 8-9, 12; Elite Prep Memo. at 6-8).  Where it is apparent that Ms. Yun speaks for all defendants, I cite only

matter, it is necessary to properly characterize the defendants'
argument.

Standing -- a notoriously nebulous concept, see Valley Forge
Christian College v. Americans United for Separation of Church and
State, Inc., 454 U.S. 464, 475 (1982) -- refers to the
constitutional requirement that a party suing in federal court
have suffered an "injury in fact" that is causally connected to
the conduct complained of and capable of being redressed by a
favorable judgment from the court.   Lujan v. Defenders of
Wildlife, 504 U.S. 555, 560-61 (1992).  The defendants' argument
-- that as a defunct entity, Manhattan Review can neither sue them
nor have Dr. Meissner sue them on its behalf -- evokes the concept
of capacity, not standing.  "Capacity has been defined as a party's
personal right to come into court" and "is conceived of as a
procedural issue dealing with the personal qualifications of a
party to litigate and typically is determined without regard to
the particular claim or defense being asserted."  6A Charles Alan
Wright et al., Federal Practice and Procedure § 1559 (3d ed. 2016).

This distinction is not inconsequential.  While the plaintiff
must "allege facts that affirmatively and plausibly suggest that
it has standing," Amidax Trading Group v. S.W.I.F.T. SCRL, 671

---

her memorandum.

8

F.3d 140, 145 (2d Cir. 2011), the plaintiff need not allege capacity to sue, except when required to show that the court has jurisdiction, Fed. R. Civ. P. 9(a)(1)(A).  In fact, lack of capacity is generally treated as an affirmative defense, Wiwa v. Royal Dutch Petroleum Co., Nos. 96 Civ. 8386, 01 Civ. 1909, 02 Civ. 7618, 2009 WL 464946, at *4 (S.D.N.Y. Feb. 25, 2009), and must be raised "by a specific denial," Fed. R. Civ. P. 9(a)(2). See Jacques Krijn En Zoon v. Schrijver, 151 F. Supp. 955, 957 (S.D.N.Y. 1957) (denying motion to dismiss for lack of capacity and noting that "[i]f defendant wishes to controvert plaintiff's legal existence and capacity to sue . . . he may do so in his answer as provided by Rule 9(a) of the Federal Rules of Civil Procedure").  A denial of capacity creates an issue of fact, 5A Charles Alan Wright et al., Federal Practice and Procedure § 1294 (3d ed. 2016), and a complaint is only properly dismissed for failure to state a claim if the lack of capacity is apparent on its face, In re K-Dur Antitrust Litigation, 338 F. Supp. 2d 517, 540 (D.N.J. 2004); see also Klebanow v. New York Produce Exchange, 344 F.2d 294, 296 n.1 (2d Cir. 1965) (noting that lack of capacity may be raised in 12(b)(6) motion "when the defect appears upon the face of the complaint").

The question of whether the plaintiffs in fact have capacity to press their claims cannot be resolved at this stage of the

litigation.   According to the defendants, the Amended Complaint is deficient because, having acknowledged that a certificate of cancellation for Manhattan review was executed in December 2011 (Am. Compl., ¶ 48), it fails to allege that "[Dr.] Meissner or anyone else has taken the necessary steps required by Delaware statute to cancel or nullify the Certificate of Cancellation." (Yun Memo. at 11).   The allegation that "Manhattan Review was revived by [Dr.] Meissner as an LLC in good standing under the law of the State of Delaware" (Am. Compl., ¶ 147) does not, according to the defendants, suffice.   (Yun Reply at 2).   But the defendants have provided no authority for this contention, and it is contrary to Rule 9(a)(1) of the Federal Rules of Civil Procedure.   The defendants' challenge to Manhattan Review's capacity to sue, then, is simply premature.

B.   Trademark Claims

The plaintiffs' third, fourth, and fifth causes of action allege that the use of two trademarks by Ms. Yun and Manhattan Elite Prep violated Section 49(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as New York statutory and common law.   Turning to the federal claim first, to make out a claim for trademark infringement or false designation of origin under 15 U.S.C. §

1125(a),[5] a plaintiff must allege "that '(1) it has a valid mark that is entitled to protection under the Lanham Act, and that (2) the defendant used the mark (3) in commerce, (4) in connection with the sale . . . or advertising of goods or service, (5) without the plaintiff[']s consent.'" Dual Groupe, LLC v. Gans-Mex LLC, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013) (first alteration in original) (quoting 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 407 (2d Cir. 2005)). Additionally, the plaintiff must allege that the defendant's use of the mark "is likely to cause confusion 'as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services or commercial activities by [plaintiff].'" Id. (alterations in original) (quoting 1-800 Contacts, 414 F.3d at 407).

Pointing to the allegation that "[Ms.] Yun transferred to herself two trademarks that were registered by Manhattan Review" (Am. Compl., ¶ 47), the defendants argue that the plaintiffs cannot sue for trademark infringement because "once a mark has been

---

[5] The plaintiffs allege trademark infringement, unfair competition, and false designation of origin, all in violation of 15 U.S.C. § 1125(a). The plaintiff appears to use these terms interchangeably to describe the alleged wrongful conduct rather than to refer to distinct theories of liability. Cf. Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1122-23 (6th Cir. 1996) ("In fact, or more precisely in law, false designation is simply a species of unfair competition.").

assigned, the assignor no longer holds any rights in the mark, including the right to sue for infringement." (Yun Memo. at 12). The defendants' contention misconstrues the complaint. There is no allegation that Manhattan Review transferred the marks by valid assignment; indeed, one crux of the plaintiffs' complaint is that Ms. Yun breached her fiduciary duty to Manhattan Review and fraudulently conveyed its assets. As the Second Circuit explained in Federal Treasury Enterprise Sojuzplodoimport v. Spirits International N.V., 623 F.3d 61 (2d Cir. 2010), it is "only after a valid assignment of trademarks [that] the assignee succeed[s] to the rights of the assignor. Obviously, an assignment obtained by fraud would not be valid." Id. at 68 (internal citations omitted). As in Federal Treasury, the plaintiffs here seek to "challenge[] the validity of the transaction by which [the defendants] purport[] to have been assigned the rights" to the marks in question and they have "the right to pursue this contention in court." Id. "[F]ederal courts may, applying the relevant law, adjudicate the ownership of a trademark as part of an infringement claim." Id. at 69. The defendants' attempts to distinguish Federal Treasury are unavailing.

The Amended Complaint alleges that Manhattan Review registered the marks in question, that the defendants used those marks to sell their goods and services without Manhattan Review's

consent, and that such use of the marks are likely to cause confusion "as to the source, origin, affiliation, association[,] or sponsorship of Manhattan Elite Prep's goods and services." (Am. Compl., ¶¶ 47, 49, 54, 66-71, 89). These allegations are sufficient to survive a motion to dismiss.[6]

C. Copyright Claims

According to the defendants, the plaintiffs' copyright claims fail because the Amended Complaint alleges that Manhattan Review has only a pending copyright application rather than a registered copyright. (Yun Memo. at 13-14).[7] On the one hand, there is a circuit split on the issue of "whether a pending application

---

[6] Because the defendants seek to dismiss the state infringement claims on precisely the same basis (Yun Memo. at 12), there is no need to separately analyze those causes of action.

Moreover, because I recommend that the plaintiffs' federal trademark claim be allowed to proceed, I do not address Ms. Yun's argument that the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the plaintiffs' state law claims. (Yun Memo. at 14-15). Ms. Yun's position is based entirely on the argument that "supplemental jurisdiction ordinarily should not be exercised where all of the federal claims have been dismissed." (Yun Memo. at 14).

[7] In his Reply, Mr. Kelly for the first time argues that, as to him, the deficiency in the copyright claims runs deeper than the registration issue. (Defendant Christopher Kelly's Reply Memorandum of Law in Further Support of His Motion to Dismiss the Amended Complaint at 4-6). I decline to address the arguments Mr. Kelly advances, as they were not properly presented. Manon v. Pons, 131 F. Supp. 3d 219, 238-39 (S.D.N.Y. 2015) (noting rule that arguments may not be made for first time in reply brief and declining to consider such arguments).

satisfies [17 U.S.C.] § 411(a)'s requirement of copyright registration as a precondition to instituting an infringement action." Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 125 (2d Cir. 2014). On the other hand, "[t]he consensus among courts in the Second Circuit clearly favors the registration approach, under which [] application for copyright registration cannot sustain a claim for infringement prior to its approval or rejection." Christians of California, Inc. v. Clive Christian New York, LLP, No. 13 Civ. 275, 2014 WL 2465273, at *4 & n.1 (S.D.N.Y. May 30, 2014) (collecting cases), rev'd on other grounds, 2014 WL 3605526 (S.D.N.Y. July 18, 2014).

Rather than pressing the argument that applying for registration suffices to bring a copyright infringement claim, the plaintiffs turn the Court's attention to a printout from the United States Copyright Office's website showing that their copyright is now registered. (Pl. Memo. at 21; Copyright Catalog: Manhattan Review Turbocharge Your GMAT Math Study Guide, attached as Exh. G to Declaration of Thomas P. Higgins dated June 17, 2016). The plaintiffs' representations concerning the registration of the copyright do not cure the defects in the Amended Complaint. Because I do not believe it appropriate to convert the present motion into one for summary judgment, I cannot consider material outside the complaint, see Friedl v. City of New York, 210 F.3d

14

79, 83 (2d Cir. 2001), and I must therefore recommend that the plaintiffs' copyright claims be dismissed. Copyright registration is a precondition to bringing an infringement action in federal court, and a majority of courts in the Second Circuit have concluded that a pending application does not satisfy that precondition. BWP Media USA, Inc. v. Gossip Cop Media, LLC, 87 F. Supp. 3d 499, 503-04 (S.D.N.Y. 2015) (collecting cases).[8]

   D.   Aiding and Abetting Claim

   According to Mr. Kelly, whether the claim for aiding and abetting Ms. Yun's breach of fiduciary duty is governed by New York or Delaware law, it must be dismissed because the Amended Complaint "does not allege that [Mr.] Kelly had knowledge that

---

   [8] It perhaps goes without saying that I also recommend that plaintiffs be given an opportunity to amend their complaint, given the ease by which the defect can be cured. See 5B Charles Alan Wright et al., Federal Practice & Procedure § 1357 (3d ed. 2016) ("[T]he cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim.").

   In most cases, it would probably also go without saying that the defendants' success in having the copyright claims dismissed under these circumstances would not entitle them to collect attorneys' fees under Section 505 of the Copyright Act, 17 U.S.C. § 505. Here, however, in connection with their motions to dismiss, the defendants have each moved for such fees. (Yun Memo. at 15; Elite Prep Memo. at 8; Kelly Memo. at 12). I recommend denying those motions. See Ritani, LLC v. Aghjayan, 970 F. Supp. 2d 232, 265-66 (S.D.N.Y. 2013) (explaining that defendant will not be considered prevailing party entitled to attorneys' fees where "plaintiff remains 'free to pursue his claims'" (quoting Dattner v. Conagra Foods, Inc., 458 F.3d 98, 103 (2d Cir. 2006))).

15

[Ms.] Yun owed a fiduciary duty to [Manhattan] Review [], that he was aware that what [Ms.] Yun was doing was wrongful, or that [he] agreed to assist [Ms.] Yun even though he knew her actions were wrongful." (Kelly Memo. at 10-11). Mr. Kelly further argues that, because the plaintiffs' claim sounds in fraud, it is subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. (Kelly Memo. at 10).

A claim under New York law for aiding and abetting a breach of fiduciary duty has three elements: "(1) [the] existence of a breach of fiduciary obligations, of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) the plaintiff suffered damages as a result of the breach." Marino v. Grupo Mundial Tenedora, S.A., 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011) (citing In re Sharp International Corp., 403 F.3d 43, 49-50 (2d Cir. 2005)). The same claim under Delaware law has four elements: "(1) a fiduciary relationship; (2) a breach of that relationship; (3) knowing participation by the alleged aider and abettor in the fiduciary's breach of duty; and (4) damages proximately caused by the breach." Id. (citing Gatz v. Ponsoldt, 925 A.2d 1265, 1275-76 (Del. 2007)).

I agree that there is no allegation in the Amended Complaint to suggest that Mr. Kelly knowingly participated in Ms. Yun's breach of her fiduciary obligations to Manhattan Review. The

allegations describing the actions Mr. Kelly took, which the plaintiffs contend illustrate that "[Mr.] Kelly did have knowledge of the wrongfulness of his actions" (Pl. Memo. at 23), are confined to three paragraphs in the Amended Complaint. (Am. Compl., ¶¶ 61-63). Those allegations assert that Mr. Kelly "[took] actions that include . . . the destruction of Manhattan Review as a viable entity in December 2011; the usurpation of Manhattan Review's assets, business, clients[,] and intellectual property; and [assisting] [Ms.] Yun and Manhattan Elite Prep in [the] scheme to take Manhattan Review's business, operations, and assets." (Am. Compl., ¶ 63). According to the plaintiffs, "'[d]estroy', 'usurp' and 'scheme' are words that unambiguously signify actions undertaken with knowledge and intent" and should be "broadly and liberally construed." (Pl. Memo. at 23). Regardless of what those words "signify" to the plaintiffs, their use in the Amended Complaint simply begs the question of what Mr. Kelly actually did and what he knew when he did those things. And the rule that a court must "construe[] the complaint liberally," GVA Market Neutral Master Ltd., 580 F. Supp. 2d at 326, does not require it to ignore what is actually alleged in the pleadings or to invent allegations.

Stripped of its conclusory and vague allegations, the Amended Complaint paints the following picture: in March 2005, Mr. Kelly

"represented [Dr.] Meissner, [Ms.] Yun[,] and Manhattan Review LLC in creating the LLC . . . drafting an Operating Agreement, and filing the necessary papers for the LLC to do business in New York" and then, in approximately December 2011, helped Ms. Yun transfer Manhattan Review's trademarks and "assist[ed] in the transfer of operations from Manhattan Review to Manhattan Elite Prep." (Am. Compl., ¶¶ 23, 62). There is no suggestion that Mr. Kelly performed any work for Manhattan Review, Dr. Meissner, or Ms. Yun between 2005 and 2011. There is therefore no indication that Mr. Kelly knew that the actions he helped Ms. Yun to perform constituted a breach of her fiduciary duties to Manhattan Review. See Kolbeck v. LIT America, Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (explaining that "New York courts and federal courts in [the Southern District of New York] have required actual knowledge" when alleging aiding and abetting a breach of fiduciary duty); Malpiede v. Townson, 780 A.2d 1075, 1097 (Del. 2001) (explaining that aiding and abetting claim requires "that the [defendant] act[ed] with the knowledge that the conduct . . . assisted constitute[d] [a breach of fiduciary duty]"). I therefore recommend that this claim be dismissed. However, as with the copyright infringement claims, I also recommend that the plaintiffs be given the opportunity to amend the complaint to allege facts (if any) that show Mr. Kelly had the requisite

18

knowledge of Ms. Yun's breach.

    E.  <u>Legal Malpractice Claim</u>

       The plaintiffs and Mr. Kelly agree that the plaintiffs' malpractice claim is subject to a three-year statute of limitations that began to run in approximately October 2011. (Pl. Memo. at 25; Kelly Memo. at 12). "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." <u>Ghartey v. St. John's Queens Hospital</u>, 869 F.2d 160, 162 (2d Cir. 1989). On the face on the Amended Complaint, the plaintiffs' malpractice claim against Mr. Kelly is clearly time-barred.

       To overcome this barrier, the plaintiffs argue that, under New York law, their claim is in fact timely because they commenced their suit in state court within the limitations period. (Pl. Memo. at 25-28). Their argument is flawed in a number of respects.

       The timeliness of the malpractice claim turns, the plaintiffs argue, on whether it can be deemed to "relate back" to the filing

of the initial complaint in state court.[9]   (Pl. Memo. at 26).[10]

---

[9] Although the pleadings in this case fail to even mention the filing of the complaint in state court, the Court can (without converting Mr. Kelly's motion into one for summary judgment) reach the merits of the parties' dispute regarding the statute of limitations by taking judicial notice of the state court complaint and its filing.   See Car-Freshner Corp. v. Getty Images, Inc., 822 F. Supp. 2d 167, 172 (N.D.N.Y. 2011) (explaining that district court may consider "any matter of which [it] can take judicial notice for the factual background of the case" without converting motion to dismiss); 5-Star Management, Inc. v. Rogers, 940 F. Supp. 512, 518 (E.D.N.Y. 1996) ("[The] Court 'is permitted to take judicial notice of matters of public record,' including 'the fact of such litigation and related filings.'" (first quoting Clarry v. United States, 891 F. Supp. 105, 109 (E.D.N.Y. 1995), aff'd, 85 F.3d 1041 (2d Cir. 1996); then quoting City of Amsterdam v. Daniel Goldreyer, Ltd., 882 F. Supp. 1273, 1279 (E.D.N.Y. 1995))).   New York State Court filings are publicly available and can be accessed online at http://iapps.courts.state.ny.us/iscroll/index.jsp.   For ease of reference, I will cite the version of the state court complaint attached in support of Mr. Kelly's motion to dismiss. (First Amended Complaint Index No. 650913/2012 ("State Court Complaint"), attached as Exh. B to Declaration of Michael A. Freeman dated April 28, 2016).

[10] The plaintiffs' citation of New York Civil Practice Law and Rules ("CPLR") § 205(a) is a distraction, as that statute does not apply to their claim against Mr. Kelly.   CPLR § 205(a) provides that, where a plaintiff timely commences an action that is subsequently terminated, the plaintiff can re-file the action within six months regardless of the statute of limitations. According to the plaintiffs, because their state court action against Ms. Yun and Manhattan Elite Prep was commenced in March 2012, and because the "derivative claims" asserted in that action were dismissed "not on the merits" on July 10, 2015, their malpractice claim against Mr. Kelly "was tolled for six months under CPLR [§] 205(a)."   (Pl. Memo. at 25-26).   This argument assumes that CPLR § 205(a) applies when, as here, the re-filed action adds an entirely new claim against a defendant not party to the initial action.   The plaintiffs cite no authority condoning such an application of CPLR § 205, an application that is beyond the "function" of the statute, which is "to ameliorate the potentially harsh effect of the Statute of Limitations in certain

And although the plaintiffs assert that "cases and authority show that the relation-back doctrine should be applied" to the malpractice claim, their argument assumes that New York law allows a new, untimely cause of action asserted against one defendant to relate back to the filing of a separate complaint naming distinct defendants.  The assumption is unwarranted, as the issue is hardly free of doubt.

In Town of Guilderland v. Texaco Refining and Marketing, Inc., 159 A.D.2d 829, 552 N.Y.S.2d 704 (3d Dep't 1990), the court considered whether the relation back doctrine was available to a plaintiff who filed an untimely complaint and then sought to have the action consolidated with a related case filed more than a year before and within the applicable limitations period.  Id. at 830-31, 705-06.  The defendants objected, arguing that the relation back doctrine "is applicable only to those motions seeking leave to amend a complaint, not those seeking consolidation."  Id. at 831, 706.  The court held that relation back was equally available where the "plaintiff has elected to serve a new complaint . . . and seek[] consolidation . . . rather than seeking an amendment of

---

cases in which at least one of the fundamental purposes of the Statute of Limitations has in fact been served, and the defendant has been given timely notice of the claim being asserted."  See George v. Mount Sinai Hospital, 47 N.Y. 2d 170, 177, 417 N.Y.S. 2d 231, 236 (1979).

the complaint in the original action." Id.; see also DeLuca v. Baybridge at Bayside Condominium I, 5 A.D.3d 533, 535, 772 N.Y.S.2d 876, 878 (2d Dep't 2004); Cuello v. Patel, 257 A.D.2d 499, 499-500, 684 N.Y.S.2d 528, 529-30 (1st Dep't 1999).  As the court explained in Town of Guilderland, the same litigation posture is achieved by filing a complaint and consolidating it with a pending action and as by adding a defendant to a pending case through amendment.  Town of Guilderland, 159 A.D.2d at 831, 552 N.Y.S.2d at 706.

The present case, however, is distinguishable in that the plaintiffs cannot consolidate their claim against Mr. Kelly in federal court with their pending state court action.  This is more than a technical difference, as the absence of the consolidation mechanism removes an important limit on the availability of relation back, namely the pendency of the action to which the new claim relates back.  Allowing relation back under these circumstances would suggest that the plaintiffs' claim against Mr. Kelly was preserved indefinitely by the filing of their state court action.  In the absence of authority to the contrary, I find that New York law does not allow relation back in the circumstances of this case, and that the malpractice claim is, therefore, time-barred.

Even if the claim against Mr. Kelly could theoretically relate

22

back to the filing of the state court complaint, it should be dismissed because (1) other than assertions made by plaintiffs' counsel in their memorandum, there is no basis in the pleadings to justify relation back doctrine and (2) even crediting counsel's representations, the circumstances do not allow the malpractice claim to relate back.

Under New York law, for a claim against one defendant to relate back to claims asserted against a different defendant, the party seeking to invoke the doctrine must show that

> (1) both claims arise out of [the] same conduct, transaction or occurrence, (2) the new party is "united in interest" with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

Buran v. Coupal, 87 N.Y. 2d 173, 178, 638 N.Y.S. 2d 405, 408 (1995) (quoting Brock v. Bua, 83 A.D.2d 61, 69, 443 N.Y.S. 2d 407, 412 (2d Dep't 1981)).  The plaintiffs' amended complaint fails to include any allegations that, in the original state court action, the plaintiffs made a mistake as to the identity of the proper parties or that Mr. Kelly knew or should have known that an action would be brought against him but for such a mistake.  The failure to allege facts that establish the availability of the relation

back doctrine is reason enough to dismiss the malpractice claim.

Perhaps appreciating the deficiency of their pleadings, the plaintiffs turn to facts outside the pleadings and argue that their failing to name Mr. Kelly in their state court action was "a good faith omission," as it was not until August 2015 that they "became aware of the scope of [Mr.] Kelly's" alleged misdeeds.  (Pl. Memo. at 28).  Even if it were permissible to consider the plaintiffs' contention, cf. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988) (explaining that it is "error for the [district] court to consider [] factual allegations contained in the plaintiffs' memorandum of law without converting the motion to one for summary judgment"), the plaintiffs' claim would still fail because the necessary unity of interests is lacking.

Two parties are united in interest when, "because of some legal relationship between [them,] they necessarily have the same defenses to the plaintiff's claim, [and] they will [therefore] stand or fall together."  Connell v. Hayden, 83 A.D.2d 30, 43, 443 N.Y.S.2d 383, 393 (2d Dep't 1981).  Providing relief to a plaintiff from the statute of limitations is justified when two defendants are united in interest because "[t]imely service upon one . . . gives sufficient notice to enable him to investigate all the defenses which are available to both defendants."  Id. at 41, 392.

24

"[T]he unity of interest test will not be satisfied unless the parties share precisely the same jural relationship in the action at hand," as is the case when, for example, one defendant is vicariously liable for the acts of the other.  <u>Zehnick v. Meadowbrook II Associates</u>, 20 A.D.3d 793, 796-97, 799 N.Y.S.2d 604, 606 (3d Dep't 2005).  As this discussion makes obvious, Mr. Kelly and the defendants in the state court action are not united in interest as to the malpractice claim: no malpractice claim was ever asserted in the state court action, so the defendants in that case had no reason to investigate defenses that would be available to Mr. Kelly.  (State Court Complaint, ¶¶ 24-53).

For each of these reasons, I recommend that the plaintiffs' malpractice claim against Mr. Kelly be dismissed.  Moreover, because the claim fails on legal grounds that cannot be remedied by repleading, I recommend that the claim be denied with prejudice. <u>See</u> <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[] of action is substantive; better pleading will not cure it.  Repleading would thus be futile.").

<u>Conclusion</u>

For the foregoing reasons, I recommend that the defendants' motions (Docket nos. 37, 40, and 43) be granted in part and denied in part; specifically I recommend dismissing count six (aiding and

abetting), counts seven and eight (copyright infringement), and count eleven (malpractice).  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.


                    Respectfully submitted,


                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       August 15, 2016

Copies transmitted this date to:

Thomas P. Higgins, Esq.
Higgins & Trippett LLP
1120 Avenue of the Americas
4th Floor
New York, NY 10036

Tracy Yun
521 Fifth Ave., 17th Floor
New York, NY 10175

Michael A. Freeman, Esq.
Greenberg Freeman, L.L.P.
110 East 59th Street
22nd Floor
New York, NY 10022